UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United Healthcare Services, Inc., and UnitedHealth Group Incorporated, | File No. 24-cv-2606 (ECT/DTS) |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| James Guemple, | |
| Defendant. | |

---

Elizabeth A. Patton, Ellie J. Barragry, and Paul William Fling, Fox Rothschild LLP, Minneapolis, MN, for Plaintiffs United Healthcare Services, Inc., and UnitedHealth Group Incorporated.

David M. Wilk and Samuel Schultz, Larson King, LLP, St. Paul, MN, and Melissa R. Muro LaMere, Snell & Wilmer LLP, Los Angeles, CA, for Defendant James Guemple.

---

Plaintiffs—two business organizations who refer to themselves collectively as "United"—seek confirmation of an arbitration award. The award preliminarily enjoined Defendant James Guemple, a former United employee, from working for a United competitor in specific ways the arbitrator found would violate a noncompete covenant and other restrictive covenants in effect between United and Mr. Guemple.

Mr. Guemple opposes confirmation. He argues the award is not final and definite and that, if it were, the arbitrator made legal and factual errors thereby exceeding his powers. These arguments are not persuasive. The weight of legal authority shows the award is final. The award is reasonably definite. And the legal and factual errors Mr.

Guemple identifies do not justify vacatur or stand in the way of confirmation. United's motion will be granted.

I

For this motion's purposes, the following background facts are not disputed. United provides "health care coverage and benefits, as well as information and technology-enabled health services." ECF No. 18-3 ¶ 1. United employed Mr. Guemple from November 2018 to January 5, 2024. *Id.* ¶ 5. Mr. Guemple was the Key Accounts Regional Vice President of Employer & Individual in United's West Region. *Id.* The West Region includes Utah. *Id.*

Mr. Guemple signed several contracts as part of his United employment. He signed an Employment Arbitration Policy when his employment started. ECF No. 18-1. As the contract's title suggests, it included an arbitration clause. *Id.* § A. The contract enabled either party to "bring an action in a court of competent jurisdiction to compel arbitration under th[e] Policy, to enforce an arbitration award, or to vacate an arbitration award." *Id.* § D(15). Mr. Guemple also signed eight agreements at various times during his United employment that included restrictive covenants: four "Nonqualified Stock Option Award[s]" and four "Restricted Stock Unit Award[s]," one of each for every year from 2020 to 2023. ECF No. 18-3 ¶ 19. Covenants in these agreements restrain Mr. Guemple in three basic ways: they include a confidentiality provision forbidding him from disclosing certain sensitive information acquired during his United employment; they include a nonsolicitation provision forbidding him from soliciting business from, or doing business

with, United competitors; and they include a noncompete provision forbidding Mr. Guemple from engaging in activities that would compete with United. *Id.* ¶¶ 20–22.

In January 2024, Mr. Guemple left United and began working for Regence BlueCross BlueShield of Utah—a United competitor—as the Market President. Compl. [ECF No. 1] ¶ 8. United, concerned Mr. Guemple was violating his restrictive covenants, initiated arbitration. *Id.* ¶ 10. United sought a preliminary injunction, and the arbitrator entered findings of fact, conclusions of law, and an award enjoining Mr. Guemple. *See* ECF No. 18-3. The factual findings and legal conclusions cover roughly twenty-two pages, and the preliminary injunction has four parts. The first three parts enjoin Mr. Guemple from violating the confidentiality, nonsolicitation, and noncompetition covenants, respectively, and detail the injunction's terms. *Id.* at 22–24. The fourth part specifies, "[f]or the avoidance of doubt," certain actions the award did not prohibit. *Id.* at 24.

II

Section 9 of the Federal Arbitration Act (or "FAA") provides,

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. Notice of a motion to vacate, modify, or correct must be served within three months after the award is filed or delivered. *Id.* § 12.

3

Though Mr. Guemple has filed no separate motion to vacate, modify, or correct the award, his opposition to United's motion to confirm the award will be construed as a motion to vacate. Persuasive precedents support this approach. *See The Hartbridge*, 57 F.2d 672, 673 (2d Cir. 1932) ("Upon a motion to confirm the party opposing confirmation may apparently object upon any ground which constitutes a sufficient cause under the statute to vacate, modify, or correct, although no such formal motion has been made."); *McLaurin v. Terminix Int'l Co.*, 13 F.4th 1232, 1240–41 (11th Cir. 2021); *United House of Prayer for All People of Church on the Rock of Apostolic Faith v. L.M.A. Int'l, Ltd.*, 107 F. Supp. 2d 227, 229 (S.D.N.Y. 2000); *Catz Am. Co. v. Pearl Grange Fruit Exch., Inc.*, 292 F. Supp. 549, 551 (S.D.N.Y. 1968); *Chandler v. Journey Educ. Mktg., Inc.*, No. 2:10-cv-00839, 2012 WL 1714885, at *2 (S.D.W.V. May 15, 2012).

A federal court has limited power to review an arbitral award. *See Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 798 (8th Cir. 2004) ("[F]ederal courts are not authorized to reconsider the merits of an arbitral award 'even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.'" (quoting *Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Loc. 1B*, 284 F.3d 821, 824 (8th Cir. 2002))). The FAA allows vacatur for four narrow exceptions: (1) fraud, (2) partiality, (3) prejudicial misconduct, or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (holding that the four grounds for vacatur are exclusive).

Mr. Guemple opposes United's motion on just the fourth ground, and it seems fair to say that his challenges fall in three categories within this ground. First, Mr. Guemple argues the award is not "final" in the FAA sense because it granted only preliminary relief. Second, Mr. Guemple says the award is not "definite" because the arbitrator assigned United responsibility for identifying individuals and organizations subject to the award's noncompetition and nonsolicitation aspects and because the award is vague in some respects. Third, Mr. Guemple says the arbitrator "exceeded" or "imperfectly executed" his powers by misapplying the law, misinterpreting the restrictive covenants, and making erroneous fact findings. Consider each of these in turn.

(1) The general rule is that an award is "final" for the FAA's purposes if the arbitration is "complete." *Local 36, Sheet Metal Workers Int'l Ass'n, AFL-CIO v. Pevely Sheet Metal Co.*, 951 F.2d 947, 949–50 (8th Cir. 1992); *see Wootten v. Fisher Invs., Inc.*, 688 F.3d 487, 491 (8th Cir. 2012) (same). The rule is "designed to avoid piecemeal litigation and repeated judicial review," much like the final-judgment rule embodied in 28 U.S.C. § 1291. *CAA Sports LLC v. Dogra*, No. 4:18-cv-01887-SNLJ, 2019 WL 1001041, at *2 (E.D. Mo. Feb. 28, 2019); *see COKeM Int'l, Ltd. v. Riverdeep, Inc.*, Nos. 06-cv-3331 (PJS/RLE) and 06-cv-3359 (PJS/RLE), 2008 WL 4417323, at *2–3 (D. Minn. Sept. 24, 2008) (recognizing that, as a general rule, an arbitration "award must finally determine all of the claims and defenses submitted for arbitration" before a federal court may confirm it, and that it likely would violate the FAA's finality requirement for a federal court "to review dozens of rulings—one by one—over the course of a single arbitration").

Notwithstanding this general "complete arbitration" rule, federal courts routinely entertain requests to confirm arbitration awards that are preliminary injunctions. *See, e.g.*, *Arrowhead Global Sols., Inc. v. Datapath, Inc.*, 166 F. App'x 39, 44 (4th Cir. 2006) ("In short, as the other circuits to have addressed this issue recognize, arbitration panels must have the power to issue temporary equitable relief in the nature of a preliminary injunction, and district courts must have the power to confirm and enforce that equitable relief as 'final' in order for the equitable relief to have teeth."); *Publicis Commc'n v. True N. Commc'ns, Inc.*, 206 F.3d 725, 729 (7th Cir. 2000) ("A ruling on a discrete, time-sensitive issue may be final and ripe for confirmation even though other claims remain to be addressed by arbitrators."); *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991) ("[W]e hold that temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful . . . are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA."); *Ace/Cleardefense, Inc. v. Clear Defense, Inc.*, 47 F. App'x 582, 582 (D.C. Cir. 2002) (affirming the district court's confirmation of an interim reward because it was "a preliminary injunction, and confirmation of the injunction is necessary to make final relief meaningful"); *Hamdorf v. United Healthcare Servs., Inc.*, No. 2:23-mc-00215-HLT, 2024 WL 3738056, at *2 (D. Kan. Jan. 31, 2024) (confirming interim arbitration award that was a preliminary injunction); *Berland v. Conclave, LLC*, No. 20-cv-00922-H-WVG, 2021 WL 461727, at *5–8 (S.D. Cal. Feb. 9, 2021) (same); *Vital Pharms. v. PepsiCo, Inc.*, 528 F. Supp. 3d 1304, 1308–09 (S.D. Fla. 2020) (same); *Ferry Holding Corp. v. Williams*, No. 4:11 MC 527 RWS, 2011 WL 5039917, at *2 (E.D. Mo. Oct. 24,

2011) (same); *Blue Cross Blue Shield of Mich. v. MediImpact Healthcare Sys., Inc.*, No. 09-14260, 2010 WL 2595340, at *2 (E.D. Mich. June 24, 2010) (same).[1]

Here, the better answer is to follow the great weight of authority and find that the arbitrator's preliminary injunction is "final" in the sense the FAA requires for confirmation. If the policies underlying the final-judgment rule of 28 U.S.C. § 1291 are a fair comparison to the FAA's finality requirement, it stands to reason that federal courts would deem arbitration awards that are preliminary injunctions "final." In the usual federal court case, an order granting or denying a preliminary injunction is immediately appealable notwithstanding its interlocutory character. 28 U.S.C. § 1292(a)(1); *see El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 482 (1999) ("Preliminary injunctions are, after all, appealable as of right[.]"). And preliminary injunctions have consequences that are final in important ways. They govern the parties' conduct through the case's duration (and unless dissolved at final judgment, then beyond the case's conclusion). If a district court had no authority to confirm an interim injunction, a party to arbitration could continue its enjoined activity during the matter's pendency with no immediate legal consequences. In noncompete cases in particular, enforcement may be crucial to protecting the interests of

---

[1] The Eighth Circuit has affirmed the confirmation of interim arbitration awards in other, non-preliminary-injunction contexts. *See, e.g., Crawford Grp., Inc. v. Holekamp*, No. 4:06-CV-1274 CAS, 2007 WL 844819, at *3 (E.D. Mo. Mar. 19, 2007) (enforcing an interim award for liability and damages, even though the parties had yet to arbitrate attorneys' fees and related expenses), *aff'd*, 543 F.3d 971 (8th Cir. 2008); *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 720 (8th Cir. 1999) (upholding confirmation of interim award where the arbitration panel had not yet decided additional, minor issues); *Manion v. Nagin*, 392 F.3d 294, 299–301 (8th Cir. 2004) (holding that the district court properly reviewed an interim award that "finally determined the substantive issues" on liability, even though the arbitrator postponed resolving the question of damages).

7

the injured party. These matters are often time-sensitive, as noncompete provisions ordinarily expire after a set term. *Pac. Reinsurance Mgmt. Corp.*, 935 F.2d at 1023. To borrow from the Fourth Circuit, finding the arbitration award to be "final" and subject to confirmation here seems necessary to give it "teeth." *Arrowhead Global Sols., Inc.*, 166 F. App'x at 44.

At the hearing on this motion, Mr. Guemple argued that this case is just like *COKeM International*, in which the court found an interim arbitration award non-final and not subject to confirmation. This is not persuasive because *COKeM* is distinguishable. There, the arbitrator issued an award regarding a standing issue and one defense, both applicable to one of ten claims and counterclaims asserted in the case. 2008 WL 4417323, at *1. The award's resolution of these two issues did not resolve the one claim to which they pertained. *Id.* at *3. And the arbitrator noted that many issues and claims remained to be resolved. *Id.* We don't have anything like that here. *COKeM* did not involve the award of a preliminary injunction. It is true that the award in *COKeM* and the award here may fairly be called "interim," but the award here seems to have resolved every claim raised in the arbitration. If there is an issue the award did not decide, Mr. Guemple hasn't identified it. To be clear, *COKeM*'s reasoning is quite persuasive, but the case addressed an award that is materially different from the award here.

(2) An arbitration award is "definite" if it "is sufficiently clear and specific to be enforced should it be confirmed by the district court and thus made judicially enforceable." *IDS Life Ins. Co. v. Royal All. Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001); *see Smart v. Int'l Bhd. of Elec. Workers, Loc. 702*, 315 F.3d 721, 725 (7th Cir. 2002) ("The purpose

8

of [§ 10(a)(4)] is merely to render unenforceable an arbitration award that is either incomplete in the sense that the arbitrators did not complete their assignment (though they thought they had) or so badly drafted that the party against whom the award runs doesn't know how to comply with it."); *see also Chase v. Cohen*, 519 F. Supp. 2d 267, 275–76 (D. Conn. 2007) (rejecting vagueness challenge to arbitration award that was an injunction).

Mr. Guemple's challenge to the award's definiteness is not persuasive.[2] It is true that the award itself did not identify organizations subject to the injunction's nonsolicitation and noncompetition requirements; it tasked United and Mr. Guemple with that responsibility. ECF No. 1-3 at 24. The award required United to provide Mr. Guemple with a "definitive list of Utah providers and customers subject to" the award. *Id.* United evidently complied with this aspect of the award and provided Mr. Guemple with this list. *See* ECF No. 25-1 at 41. If Mr. Guemple knew of "any other prospective provider or customers" not on United's list but who are subject to the restrictive covenants, then the award made clear that Mr. Guemple "must also refrain from soliciting these prospective providers or customers." ECF No. 1-3 at 24. In another case, an arbitration award that

---

[2]  If an award is indeterminate, the law is clear that a district court should not vacate but remand for clarification. *See, e.g.*, *Domino Grp., Inc. v. Charlie Parker Mem'l Found.*, 985 F.2d 417, 420 (8th Cir. 1993) ("An ambiguous award should be remanded to the arbitrators so that the court will know exactly what it is being asked to enforce." (quoting *Ams. Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir. 1985))); *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 830–31 (10th Cir. 2005); *Green v. Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000); *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 254 F. Supp. 2d 12, 16–17 (D.D.C. 2003). Mr. Guemple does not seek a remand for clarification.

leaves issues open to be resolved by the parties might raise concerns regarding the award's definiteness (or perhaps finality). Here, whatever uncertainty may have existed on the award's entry date regarding the prospective content of United's list, United subsequently provided the list and Mr. Guemple identifies no indefiniteness regarding the list's content. In this respect, the indefiniteness Mr. Guemple complains about seems hypothetical.[3]

      Mr. Guemple also argues that the award is not definite because it is contradictory. Mr. Guemple claims the award's third and fourth paragraphs contradict each other. Paragraph 3 forbids Mr. Guemple from "[m]eeting or discussing with any external business, legislative, or regulatory leaders, or otherwise engaging in or performing work, regarding strategies, approaches, initiatives, solutions, or plans for the Utah market that Mr. Guemple learned at United." ECF No. 18-3 at 25 (emphasis added). Paragraph 4 lists parallel permitted activities, including "[m]eeting with external business, legislative, regulatory, and other government officials regarding non-confidential and non-strategic issues." *Id.* These provisions are not contradictory. The former addresses activities subject to the restrictive covenants; the latter does not.

      (3) A party who seeks to show that an arbitrator "exceeded" or "imperfectly executed" his powers "bears a heavy burden." 9 U.S.C. § 10(a)(4); *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). "Courts have absolutely no authority to reconsider the merits of an arbitration award, even when the parties allege the award rests

---

[3]     Mr. Guemple complains that his inability to object to the United-created list's content deprived him of "process." ECF No. 24 at 14–15. This process-related concern does not show indefiniteness.

on factual errors or on a misinterpretation of the underlying contract." *McGrann v. First Albany Corp.*, 424 F.3d 743, 748 (8th Cir. 2005). "It is not enough for petitioners to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). To succeed, challengers must show that the arbitrator acted "outside the scope of his contractually delegated authority," *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000), by not "even arguably construing or applying the contract." *Beumer Corp. v. ProEnergy Servs., LLC*, 899 F.3d 564, 565 (8th Cir. 2018). "It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen*, 559 U.S. at 671 (cleaned up). "[T]he sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC*, 569 U.S. at 569; *see Beumer Corp.*, 899 F.3d at 565 (8th Cir. 2018) (recognizing that the required showing applies to errors of law and of fact).

Here, the arbitrator's findings of fact, conclusions of law, and award reflect careful, conscientious consideration of the various restrictive covenants, the relevant facts, and the thoughtful formation of injunction terms. If there is some aspect of the arbitrator's decision that strayed from the contracts, Mr. Guemple does not identify it. His arguments are geared to show only that the arbitrator made legal and factual errors. As the cases make clear, these are not valid grounds on which to challenge an arbitration award. The analysis could end there.

If Mr. Guemple's arguments might conceivably justify not confirming (or vacating) the award, the arguments are not persuasive. Mr. Guemple argues that the injunction's scope exceeded the nonsolicitation agreement by preventing him from interviewing United "members." *See* ECF No. 24 at 9. This argument misreads the award. As support for this argument, Mr. Guemple cites "Award at ¶ 4(e)." *Id.* Paragraph 4 of the award did not prohibit Mr. Guemple from doing anything; in the interest of avoiding doubt, the paragraph identifies activities Mr. Guemple "is not prohibited from" undertaking during his Regence employment. ECF No. 18-3 ¶ 4.

Mr. Guemple claims that the award ignored key features of the restrictive covenants, namely the lookback period and "confidential information" requirement of the noncompetition provision. ECF No. 24 at 11–12. The noncompetition provision precluded Mr. Guemple from engaging in competitive activity "with any Company activity, product, or services that [Guemple] engaged in, participated in, or had Confidential Information about during [Guemple's] last [24 or 36] months of employment with the Company." ECF No. 18-3 ¶ 22 (alterations in original) (footnote omitted). The award, Mr. Guemple claims, failed to interpret the contract because it lacked specificity. It is true that the award enjoined Mr. Guemple from "meeting or discussing with any external business, legislative, or regulatory leaders . . . regarding strategies, approaches, initiatives, solutions, or plans for the Utah market that Mr. Guemple learned at United," without specifying that the forbidden discussions involved confidential information and without identifying the period when Mr. Guemple learned the information. *Id.* at 25. The arbitrator did find, however, that Mr. Guemple was engaged in United's Utah activity in even the shorter lookback

12

period. *Id.* ¶ 14 (noting that Mr. Guemple "maintained significant responsibilities for, and confidential information about, the Utah market"); *id.* ¶ 15 ("[Mr. Guemple] maintained his responsibility over Utah and continued attending regional meetings that included confidential discussions about Utah, strategizing with local Utah leadership about the Utah market, and leading regularly scheduled Key Accounts meetings, which involved confidential discussions of all Mr. Guemple's markets, including Utah."); *id.* ¶ 16 ("Mr. Guemple attended the two-day business planning presentations for 2024 which involved highly confidential discussions about the Utah market that he could use to Regence's advantage. The information is not stale and is competitively sensitive and could give Regence an advantage in competing against United in Utah."). The award enjoins conduct related to a time in which Mr. Guemple had confidential information, meaning the arbitrator plainly interpreted the contract.

Mr. Guemple claims "[t]he Award expands the noncompete by prohibiting activities that Guemple never engaged in at United." ECF No. 24 at 12. Specifically, Mr. Guemple argues that, because he worked for United only in "Key Accounts," the noncompetition provision of the contract "could never be enforced beyond Key Accounts." *Id.* Therefore, the argument goes, the Arbitrator exceeded his powers by enjoining Mr. Guemple from working at Regence in "sales, products, initiatives, business plans or customers." *Id.* at 13; *see* ECF No. 18-3 at 25. That is not what the noncompetition provision says. It says that Mr. Guemple could not "engage in or participate in any activity that competes, directly or indirectly, with any Company activity, product, or services that [Guemple] engaged in, participated in, or had Confidential Information about during [Guemple's] last [24 or 36]

13

months of employment with the Company." ECF No. 18-3 ¶ 22 (alterations in original) (footnote omitted). What matters is that the enjoined conduct *competes* with an activity that United engaged in, not that the enjoined conduct falls within the boundaries of Mr. Guemple's prior job description.

Along similar lines, Mr. Guemple argues that the arbitrator expanded the nonsolicitation provision's scope "by prohibiting contacts with brokers, who are neither customers nor providers of United." ECF No. 24 at 13. Mr. Guemple is correct that the nonsolicitation provision does not mention "brokers." ECF No. 8-1 § 8(c)(i)(A)–(B); ECF No. 8-2 § 8(c)(i)(A)–(B). But the nonsolicitation provision of the Award *also* does not mention brokers. ECF No. 18-3 at 24. Mr. Guemple is referring to paragraph 3(c) of the award, which is part of the noncompetition injunction, not the nonsolicitation provision. And the noncompetition contract prohibits Mr. Guemple from assisting "anyone" in anti-competitive activity—brokers presumably included. No. 8-1 § 8(d)(ii); ECF No. 8-2 § 8(d)(ii).

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Plaintiff's Motion to Confirm Arbitration Award [ECF No. 15] is **GRANTED**; and

2. The Interim Arbitration Award of May 13, 2024 [attached as Exhibit A] is **CONFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 3, 2024                     s/ Eric C. Tostrud
                                           Eric C. Tostrud
                                           United States District Court